*[margin note:]* CLARK *vs* YOUNG *et al.* thereon may not conform to the entries,

---

## Clark *vs* Young *et al.*

ERROR TO THE FAYETTE CIRCUIT.

*Bar in equity. Injunctions.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

BENJAMIN GRIMES having enjoined, on the ground of usury, a judgment which had been obtained against him by *John Clark*, on a note for $122, executed in the year

*[margin note:]* CHANCERY,

*Case* 28.

*September* 28,

Case stated and the decree of the Circuit Court,

1829, for a supposed balance of an old loan, upon which, as alleged, much more than the principal had been paid; his injunction was afterwards *dissolved*, because the injunction bond had been lost and he refused to execute another, and at a subsequent term, his suit was *abated* by his death.

Subsequently *Clark* brought a suit in chancery for enforcing the lost injunction bond against *John Young*, the surety therein, and *James E. Davis*, the administrator of the principal obligor, *Grimes*, and obtained a decree *pro confesso*, his bill being unanswered. Afterwards Young and Davis filed a bill for reviving *Grimes'* original suit, and for enjoining Clark's last decree, for errors alleged to appear on its face; but upon hearing, the Circuit Judge dismissed this bill. Before the close of the term at which that decree of dismission was rendered, *Young* and *Davis* appeared and filed a petition for opening the decree for alleged errors appearing in the record, but by mistake or some clerical misprision, no entry was made on the order book noticing the petition or the recognition and continuance of it by the Court; and afterwards *Young* and *Davis* filed a bill alleging these facts, exhibiting the pretermitted petition, and praying for a revivor of the abated suit of *Grimes*, and for an injunction against the decree on the injunction bond. In his answer to this last bill Clark relied on his decree on the last injunction bond as a bar, and moreover insisted that the record did not show that there was available usury in the note on which his judgment had been obtained: but on the final hearing, the Circuit Judge perpetually enjoined Clark's decree, excepting as to only about $12, and he now seeks a reversal of that decree.

If an injunction enjoining a judgment at law, on the ground of usury, be properly *dissolved*, the ground of usury cannot be legitimately relied on in a suit in chancery, brought to set up the *lost* injunction bond,

As the allegations by *Young* and *Davis* respecting the petition are virtually admitted by *Clark's* answer, there can be no doubt that their last bill should have all the effect to which their first was entitled; and the first question to be considered, therefore, is whether, after the decree by default on the lost injunction bond, the bill by *Young* and *Davis* was maintainable? And we think it was.

If the injunction had been properly *dissolved* on account of the loss merely of the injunction bond, a decree for enforcing the last bond could not have been resisted by Grimes himself, on the ground of usury, which he was litigating in the very suit in which the dissolution had been decreed; and, of course, neither his surety nor administrator, by reviving, as they had a right to do, his abated suit, could have resisted the decree for dissolution on the same ground; for if this could be done, the interlocutory dissolution of an injunction may always be made unavailing as long as the principal suit shall remain undecided.

And if such a dissolution as that exhibited in this case should not be enforced by a court of equity, because, on its face, it was irregular and unjust, and should have been only a *discharge* instead of a *dissolution*, still the failure to answer *Clark's* bill on the lost bond did not preclude *Young* and *Davis* from an equitable right to review the decree by default, for errors of law apparent therein.

And if it be admitted that a bill of review should not be sustained on such facts as those appearing in the record of *Clark's* decree on the lost bond, nevertheless, we have no doubt that Davis might still have revived his intestate's original suit, and have been entitled therein to such a final decree for relief as Grimes himself might have obtained after the dissolution of his injunction and the enforcement of the injunction bond, had he lived and had his suit therefore never been abated by death. And although upon such a bill of revivor merely, it might have been improper to *enjoin Clark's* decree on the injunction bond; yet as it was in fact enjoined, it was not erroneous to perpetuate the injunction, if on the final hearing, *Grimes'* administrator would have been entitled to a decree *pro tanto* for restitution, had there been no injunction and had the amount decreed to *Clark* been paid, either by the administrator or by *Young* as surety; for, on the hypothesis suggested, it would have been idle and unreasonably vexatious and circuitous to dissolve the injunction against *Clark* because it had been improvidently granted in the first instance, thereby remitting him to his original right to enforce that decree by execution, and

CLARK
*vs*
YOUNG *et al.*

but if the injunction be *discharged* because the comp'lt. refused to execute a new injunction bond, it constitutes no bar to the adm'r. and surety of comp'lt. in a new bill setting up *usury* in the original transaction.

Although an injunction may have been improvidently granted, yet if it be in fact pending when a final decree is made in the cause, and comp'lt. show himself entitled to the relief prayed for, it will be proper to make the injunction perpetual, as far as comp'lt. may show himself entitled to relief.

then at the same time to decree that he should restore the greater part of the amount of that decree at the instant of its collection.

We are of the opinion, therefore, that the decree now complained of should not be reversed, if, in the revived suit of *Grimes,* it was proper to decree that there was as much usury in the note of 1829 as the Circuit Judge decided that there was. And upon this last point we have no great difficulty. If, as alleged in *Grimes'* original bill, the amount of the loan was only $150, there can be no doubt that the whole of the note for $122 was given for usury. *Clark* denied that the amount of the loan was as small as $150, and alleged that it was at least $175 or perhaps $200. *Grimes* also alleged that several years after the loan, to-wit: in the year 1820, he executed two notes to *Clark,* one for the principal which had been loaned, and the other for the usurious interest which exceeded in amount the sum loaned, and that the smaller note for principal was for $178. These allegations were not responded to by *Clark,* and there is no extraneous proof as to the amount of the original loan.

Upon these facts the Circuit Judge had an unquestionable right to assume that not more than $175, or $178 at the utmost, had been loaned by *Clark* to Grimes. He assumed $175 as the *maximum* amount of the loan; and on that assumption, there being clear proof of usury in the loan, his decree is not for two much. Perhaps he might have been more certainly and exactly right had he taken about $178 as the amount of the loan—but this is not absolutely certain, and even if it were, the difference in the result would be too trifling to notice, especially after all the vexation and expense to which Grimes and his surety and administrator have been subjected by the persevering efforts of Clark to enforce usurious exactions.

It is, therefore, the opinion of this Court, that the decree now sought to be reversed should be, and consequently it is, affirmed.

*Pindell* for plaintiff; *Robinson & Johnson* for defendants.